UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN A LAFOND,

    Plaintiff,

v.                                      Case No. 1:10-cv-371
                                           Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on June 15, 1956 (AR 61).[1] He completed high school in 1975, having attended special education classes from 1968 through 1975 (AR 81-82). Plaintiff alleged a disability onset date of January 15, 2005 (AR 61, 77). He had previous employment as a general laborer, a janitor, a line worker and a power washer (AR 101). Plaintiff identified his disabling conditions as: "bad knees and legs nerves [sic];" pain in the back, legs, hands, arms, and joints; seizures; speech problems; and learning problems (AR 77). On April 25, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 17-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 15, 2005 and met the insured status requirements of the Social Security Act through December 31, 2009 (AR 19). At step two, the ALJ found that plaintiff suffered from severe impairment of alcoholic polyneuroapathy (AR 19). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. (AR 19). The ALJ decided at the fourth step:

> . . . that the claimant has the residual functional capacity to perform the full range of light work. The claimant can push, pull, lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours of an eight-hour workday and sit six hours of an eight-hour workday as defined in 20 CFR 404.1567(b) and 416.967(b).

(AR 19-20). The ALJ further found that plaintiff could not perform any of his past relevant work (AR 22).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 23). Specifically, the ALJ found plaintiff could perform the following jobs in the local economy: packager (800 jobs); and assembler (900 jobs). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 15, 2005 through the date of the decision (April 25, 2008) (AR 23-24).

### III. ANALYSIS

Plaintiff raised three issues on appeal.

### A. Substantial evidence does not support the opinion of the ALJ because he failed to address plaintiff's mental limitations.

Plaintiff contends that the ALJ failed to address his mental limitations based upon the following statement in the ALJ's decision, "[b]ecause the claimant's medically determinable physical impairments were dispositive of the issue of disability, the claimant's alleged medically determinable mental impairments were neither reached nor addressed in this determination." (AR 21). Defendant acknowledges this omission by admitting that "[t]here is no dispute that the ALJ should have discussed Plaintiff's mental conditions in the decision." Defendant's Brief at p. 7.[2]

The agency's regulations provide that "when we evaluate the severity of mental impairments for adults . . . we must follow a special technique at each level in the administrative review process."  20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The agency's use of the "special technique" is explained as follows:

(b) Use of the technique.

> (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s).  See § 416.908 for more information about what is needed to show a medically determinable impairment.  If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.

---

[2] In this regard, the court notes that the record includes a mental RFC assessment and psychiatric technique review form prepared by a state agency physician (AR 137-44).

> (2) We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record our findings as set out in paragraph (e) of this section.

20 C.F.R. §416.920a(b). *See also*, § 404.1520a(b).

Despite omitted any discussion of plaintiff's mental impairment, defendant asserts that "the record as a whole supports the ALJ's finding that Plaintiff was capable of performing light work." Defendant's Brief at p. 7. The court disagrees. The ALJ failed to evaluate plaintiff's mental impairments using the special technique as required by the regulations. "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Commissioner of Social Security*, 478 F.3d 742, 746 (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 546-47 (6th Cir.2004) (quoting *Connor v. United States Civil Service Commission*, 721 F.2d 1054, 1056 (6th Cir.1983), for the principle that an agency's decision will be reversed upon a "showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses."). Furthermore, it appears to the court that defendant's brief is, for lack of a better term, a supplemental agency decision on the issue of plaintiff's mental impairments. Contrary to defendant's invitation, the court should not, and indeed cannot, perform a *de novo* review of the evidence with respect to plaintiff's alleged mental disability. *Brainard*, 889 F.2d at 681. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for an evaluation of plaintiff's alleged mental disability.

### B.     The ALJ erred by not following vocational rule 202.09.

The ALJ applied rule 202.17 of the medical-vocational guideline (the "grid"), in denying benefits. Plaintiff contends that he, plaintiff, should have been found disabled under "[medical-]vocational rule 202.09." For the reasons stated below, the court concludes that the ALJ improperly applied vocational rule 202.17.

The medical-vocational guidelines "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). An ALJ may use the grid, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines. *Siterlet v. Secretary of Health and Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987). *See Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) ("the grids are a shortcut that eliminate the need for calling in vocational experts").

The grid only applies to a claimant when all factors (i.e., age, work experience, physical ability and education) meet the requirements as set forth in the grid). "In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled." *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). As the Sixth Circuit explained:

> The grid comes into play only when the claimant's characteristics precisely coincide with the grid. In any other situation the grid is used at most for guidance in the disability determination. When the claimant does indeed match one of the grid's patterns, then all the grid does is announce that substantial gainful work in the national economy is available for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available.

*Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981).

The rule at issue, 202.09, directs a finding of "disabled" to an individual who meets the following requirements: a maximum sustained work capability limited to light work; "closely approaching advanced age" (i.e., age 50-54); with an education of "illiterate or unable to communicate in English;" and, whose previous work experience was "unskilled or none." 20 C.F.R. Pt. 404, Subpt. P. App. 2, Rule 202.09.

As an initial matter, the ALJ did not address plaintiff under Rule 202.09. Rather, the ALJ found that as of the date of the decision (April 25, 2008), plaintiff was 49 years old, considered a "younger individual," had a limited education, and was able to communicate in English (AR 22). Based on these findings, the ALJ applied Rule 202.17, which directs a finding of "not disabled" to an individual who meets the following requirements: a maximum sustained work capability limited to light work; a "younger individual" (i.e., age 18 to 49), with an education of "limited or less - at least literate and able to communicate in English;" and, whose previous work experience was "unskilled or none" (AR 23). 20 C.F.R. Pt. 404, Subpt. P. App. 2, Rule 202.17. In applying Rule 202.17, the ALJ clearly mis-classified plaintiff's age, since he was born on June 15, 1956, and was 51 years old at the time of the decision. For this reason alone, the ALJ's application of the grid was in error.

Another issue before the court is whether plaintiff should be considered "literate" or "illiterate" for purposes of applying the grid. The parties' briefs discuss plaintiff's literacy, in part, as a function of his IQ and education. The record reflects that plaintiff attended special education classes from 1968 to 1975 (in his words "I've always been in special ed all my life") and that he had to take an oral driver's license test (AR 81-82, 208-09). In addition, as discussed in § III.C., *infra*,

8

an issue exists as to whether plaintiff meets a listing for mental retardation due to his relatively low IQ scores. These considerations, coupled with the ALJ's failure to address plaintiff's mental impairments and the ALJ's mis-classification of plaintiff as a younger individual for purposes of the grid, lead the court to conclude that a remand is necessary to resolve the issue of whether plaintiff should be considered illiterate under the grid. As with the mental impairments addressed in § III.A., *supra*, the ALJ's failure to address this issue in his decision would require this court to apply the grid based upon a *de novo* review of the evidence. The court should not undertake such a review on this appeal. *Brainard*, 889 F.2d at 681. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of plaintiff's disability under the grid.

> **C. Substantial evidence does not support the decision of the ALJ because he failed to consider whether plaintiff's condition meets or equals Listing 12.05c.**

Finally, plaintiff contends that the ALJ failed to consider whether he met the requirements under Listing 12.05C (mental retardation), which provides in pertinent part as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \* \* \*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

9

20 CFR Pt. 404, Subpt. P, App. 1, Listing 12.05. In addition, to meet the requirements of the listing, plaintiff must demonstrate that he was diagnosed with mental retardation before age 22. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("recent amendments to the regulations further clarify that a claimant will meet the listing for mental retardation only '[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria. . . .' 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) [noting that "Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation"]").

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the

claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Plaintiff contends that his full scale IQ score of 69 and verbal IQ score of 60, combined with his alcoholic polyneuroapathy, speech impediment and Global Assessment of Functioning (GAF) score of 50,[3] are sufficient to meet the requirements of Listing 12.05 C. It would appear to the court that plaintiff met the requirements of Listing 12.05C, based upon his IQ scores (both of which were between 60 and 70) and the ALJ's finding that he suffered from a severe impairment of alcoholic polyneuroapathy. However, questions exist which need to be resolved by the ALJ, e.g., the applicability of plaintiff's IQ scores which were based on tests taken in 1971, and whether a doctor's impression that plaintiff was "socially and organically handicapped" at age 15 satisfies a diagnosis of mental retardation under the Listings (AR 117-19). Because the ALJ did not address plaintiff's mental impairments in the first instance, there is no administrative determination on these issues for the court to review. Accordingly, as with the other issues raised by plaintiff, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for an evaluation of whether plaintiff meets the requirements of Listing 12.05C.

---

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.* Plaintiff's GAF score of 50 lies at the top of the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

**IV.     Recommendation**

For these reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g): for an evaluation of plaintiff's alleged mental disability; for a re-evaluation of plaintiff's disability under the grid; and for an evaluation of whether plaintiff meets the requirements of Listing 12.05C.


Dated:  June 13, 2011                               /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).